UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

CURTIS SNYDER,

        Defendant.

24-CR-12-LJV
DECISION & ORDER

---

On March 12, 2024, the defendant, Curtis Snyder, pleaded guilty before United States Magistrate Judge Jeremiah J. McCarthy to a one-count information charging a violation of 21 U.S.C. § 846. *See* Docket Items 18 and 21. Judge McCarthy then issued a Report & Recommendation recommending that this Court accept Snyder's guilty plea. Docket Item 22.

This Court determined that an additional plea colloquy was necessary before the Court could accept that recommendation and held a status conference to conduct that colloquy on July 11, 2024. *See* Docket Item 30. During that conference, Snyder said that he had changed his mind and wanted to proceed to trial rather than plead guilty. *See id.* The Court therefore adjourned the matter so that Snyder could discuss that decision with his attorney. *See id.*

On August 9, 2024, Snyder's attorney informed the Court that the prior plea agreement had inaccurately represented Snyder's criminal history and that the parties were working toward a new agreement. *See* Docket Item 34. Approximately two weeks later, the parties informed the Court that they had reached a new plea agreement. *See* Docket Items 39 and 60. This Court then went back to square one, conducted a

complete and thorough plea colloquy with Snyder, and accepted his guilty plea.  See Docket Items 45 and 60.

Several weeks later, this Court received a letter from Snyder asking for new counsel and indicating that he wanted to withdraw his plea.  See Docket Items 47 and 48.  The Court granted Snyder's request for new counsel and allowed Snyder to file a motion to withdraw his plea.  See Docket Item 49.

On April 3, 2025, Snyder moved to withdraw his guilty plea.  Docket Item 58.  After the government responded, Docket Item 63, this Court heard oral argument and reserved decision, see Docket Item 67.

For the reasons that follow, this Court denies Snyder's motion to withdraw his plea.

## LEGAL STANDARD

Rule 11 of the Federal Rules of Criminal Procedure governs pleas.  Rule 11(d) provides that a defendant may withdraw a plea of guilty "after the court accepts the plea[] but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  The defendant bears the burden of showing a fair and just reason for withdrawing a guilty plea.  *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997).

"In ruling on a plea withdrawal motion, courts consider whether the defendant 'has raised a significant question about the voluntariness of the original plea.'"  *United States v. Albarran*, 943 F.3d 106, 117 (2d Cir. 2019) (quoting *United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004)).  Courts may also consider:

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea.

*Id.* at 117-18 (quoting *Schmidt*, 373 F.3d at 102-03). And courts should consider those criteria carefully because "[s]ociety has a strong interest in the finality of guilty pleas." *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989); *see also United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) ("A guilty plea is no mere formality, but a 'grave and solemn act.'" (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997))).

## **DISCUSSION**

Snyder argues that he should be permitted to withdraw his plea because his "decision [to] enter his plea was the product of ignorance and fear." Docket Item 58 at ¶ 12. More specifically, he says that "he was not provided with an opportunity to review the discovery provided to counsel in advance of his plea[,] and he relied instead upon representations made by counsel as to the credibility of alleged evidence against him." *Id.* And, Snyder says, "[a] subsequent review of discovery with [his new attorney] has led [Snyder] to conclude that there is no credible evidence of his guilt and to assert his legal innocence." *Id.*

But Snyder's sworn statements at his two plea colloquies—and especially his colloquy before this Court—belie his current claim. Indeed, this Court specifically inquired whether Snyder was satisfied with his former attorney, and Snyder indicated that he was:

> THE COURT: Mr. Snyder, are you satisfied with the representation your lawyer has provided to you?

3

> THE DEFENDANT: I am.
>
> THE COURT: Have you told her everything you know about your case?
>
> THE DEFENDANT: I have.
>
> THE COURT: Do you believe she's fully considered any defenses you may have?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you believe she's fully advised you about the case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had enough time to talk to her about it?
>
> THE DEFENDANT: Yes.

Docket Item 60 at 43.

Moreover, during that same plea colloquy, the government explained in detail how it would prove its case:

> THE COURT: [H]ow would the government go about proving those facts if this case were to go to trial?
>
> [THE PROSECUTOR]: Your Honor, if this case were to proceed to trial, the government would prove the charge through cooperating witnesses who would testify to the nature and extent of the narcotics conspiracy. The government would also show communications from defendant's Facebook and Google accounts, as well as including drug-trafficking communications with coconspirators. The government would also show the video that was mentioned in the factual basis of Giselle Bennett making statements regarding the overdose death related to the charged conspiracy. And finally, the government would elicit the testimony of law enforcement officers involved in this investigation who would testify to their investigatory steps as well as their identification of coconspirators, suppliers, and customers.

*Id.* at 29. Snyder agreed to the factual basis for the plea, said he understood the evidence the prosecutor described, and admitted under oath the conduct he now denies:

4

THE COURT: Mr. Snyder, did you hear and understand everything that the prosecutor just said about how the government would prove its case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you disagree with anything he said about how the government would prove its case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty because you did the things that the plea agreement says you did, and that are charged in the information?

THE DEFENDANT: Yes.

THE COURT: Tell me in your own words what you did that you're pleading guilty to.

THE DEFENDANT: I was selling drugs and using drugs. And I did make a video trying to -- or, saying that -- that a friend of mine wasn't involved in the overdose death. Everything that was said that he said is true.

THE COURT: Okay. So let me break it down a little bit.

THE DEFENDANT: Okay.

THE COURT: Was there an agreement between or among two people to possess heroin, fentanyl, and methamphetamine with the intent to distribute those substances, and to distribute those substances?

THE DEFENDANT: Yes, sir.

THE COURT: And did you know about that agreement?

THE DEFENDANT: Yes.

THE COURT: And did you intend to participate in and actually participate in that unlawful agreement?

THE DEFENDANT: I did.

*Id.* at 30.

And what is more, the Court explained:

> Whether you plead guilty is your decision, it's not your lawyer's decision. You should do what you want to do, not what you think your lawyer wants you to do, not what you think I want you to do, not what you think anyone wants you to do. This is your call. Do you want to plead guilty?

*Id.* at 20. Snyder, under oath, responded: "Yes."

Sworn "statements under oath during a plea allocution . . . must be given presumptive force of truth." *Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (internal citations and quotation marks omitted)). Thus, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

As the government observes, *see* Docket Item 65 at 8, it is Snyder's burden to show "a fair and just reason" to withdraw his guilty plea. *See United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016). "[T]he standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *Albarran*, 943 F.3d at 118 (quoting *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018)).

Snyder has not met this high burden. Based on the thorough plea colloquy and Snyder's statements under oath, this Court finds that he has not "raised a significant

6

question about the voluntariness of the original plea." *See id.* at 117 (quoting *Schmidt*, 373 F.3d at 103).

And that is especially so because Snyder went through not one, but two, plea colloquies. He asserted under oath—twice—that he agreed with the factual basis for the plea and was guilty of that conduct. *See* Docket Item 60 at 29-30 (quoted above); Docket Item 23 at 16 ("MAGISTRATE JUDGE MCCARTHY: Okay. Mr. Snyder, you've heard the government's ultimate summary of the facts that it would seek to prove. Is that summary accurate? THE DEFENDANT: Yes, sir. MAGISTRATE JUDGE MCCARTHY: Is that what occurred? THE DEFENDANT: Yes, sir."). So Snyder's "assert[ion of] his legal innocence," Docket Item 58 at ¶ 12, rings hollow, and his "reevaluation of the government's case against him does not justify withdrawal of [his] plea," *see Albarran*, 943 F.3d at 118 (citation and internal quotation marks omitted).

Nor do the other factors weigh in favor of allowing Snyder to withdraw his plea. First, although he changed his mind shortly after his final plea colloquy with this Court, that came about six months after his first plea colloquy with Judge McCarthy. And the fact that he has changed his mind back and forth already cuts against allowing him to do it again.

Second, although Snyder now asserts "legal innocence," Docket Item 58 at ¶ 12, he presents no evidence of that claim. In fact, he says that he has "conclude[d] that there is no credible evidence of his guilt," *id.*, despite the fact that he twice explicitly admitted facts that would prove his guilt, *see* Docket Item 60 at 29-30; Docket Item 23 at 16. So there is no reason to believe that his assertion of innocence is anything more than just that—an assertion.

Finally, the government would indeed be prejudiced if Snyder were allowed to withdraw his plea. In fact, the government asserts that "prejudice is particularly strong in this case because the government's trial evidence depended on the testimony of cooperating witnesses, some of whom have since been sentenced." Docket Item 65 at 34. The Court agrees that based on that representation, the government would be severely prejudiced if it had to try Snyder's case now.

## **CONCLUSION**

Ultimately, Snyder has presented nothing more than "bald statements that simply contradict what he said at his plea allocution," and that is simply not enough. *See Torres*, 129 F.3d at 715. Because Snyder has not shown any fair and just reason to withdraw his plea, his motion, Docket Item 58, is DENIED. The Court will schedule a date for sentencing.

SO ORDERED.

Dated:   August 1, 2025
         Buffalo, New York

                                                 */s/ Lawrence J. Vilardo*
                                                 LAWRENCE J. VILARDO
                                                 UNITED STATES DISTRICT JUDGE